IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ROBERT CHARLES HOPES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No.: **3:08-cv-00713-DRH-PMF** |
| | ) | |
| **LT. MASH, C/O LEWIS, WEEKS, and** | ) | |
| **W. BOAZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is Defendants Jesse Mash, Mark Weeks, and Wayne Boaz's Motion for Summary Judgment (Doc. 36). Plaintiff opposed this Motion through a Response filed by his appointed counsel (Doc. 62). After the 60 day stay[1] of this case was lifted, Defendants filed a Reply to Plaintiff's Response (Doc. 67). Because Defendants argue that Plaintiff failed to exhaust his administrative remedies, a *Pavey* hearing was held on July 23, 2010.

For the following reasons, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 36) be **GRANTED.** It is further **RECOMMENDED** that Plaintiff's claim against Defendant Lewis be **DISMISSED** for want of prosecution.

## FACTS

Plaintiff is proceeding on a 42 U.S.C. § 1983 civil rights claim alleging the intentional use of excessive force by Defendants Weeks and Boaz, and the failure to intervene in the assault by Defendants Mash and Lewis.

---

[1] This case was stayed on February 3, 2010 in order for the Court and Plaintiff's appointed counsel to locate Plaintiff after he was released from federal custody.

1

In his Complaint, Plaintiff alleges that on July 27, 2006 – during his period of incarceration at the United States Penitentiary in Marion, Illinois ("USP Marion") – he was assaulted by Correctional Officers Weeks and Boaz, while Correctional Officers Mash and Lewis looked on without intervening to stop the assault.  On July 28, 2006, Plaintiff was transferred to the Administrative Maximum Institution in Florence, Colorado ("USP Florence"). Between July 28, 2006 (the day after the alleged incident giving rise to this case) and February 2, 2007 (three days prior to Plaintiff filing this action), Plaintiff filed 36 recorded administrative grievances or appeals from decisions.

Among the records is a BP-13 form in which Plaintiff appealed a decision denying his grievance about an assault that allegedly took place at USP Marion on July 14, 2006 (Remedy 421297-R1).  Plaintiff dated this grievance form August 15, 2006 – 19 days after the alleged incident that gave rise to this case.  There is another appeal from a decision denying Plaintiff's grievance about a staff assault filed on September 5, 2006 (Remedy 426954-R1), and a grievance about a staff assault filed on January 12, 2007 (Remedy 440654-F1), but both of these cases involved members of the USP Florence staff, not USP Marion staff.  Conspicuously absent from these 36 administrative grievances or appeals is a record of a complaint regarding the alleged assault at USP Marion on July 27, 2006.

## APPLICABLE LAW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court

must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. In order to defeat summary judgment, the nonmoving party must do more than raise a metaphysical doubt as to the material facts. Instead, he "must come forward with specific facts showing that there is a genuine issue for trial." *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir.2006), *cert. denied*, 549 U.S. 1210, 127 (2007), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to fully exhaust their available administrative remedies before seeking relief in cases involving prison conditions. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the applicable procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Bureau of Prisons has established an administrative remedy procedure through which an inmate may seek formal review of a complaint relating to any aspect of his confinement. *See* 28 C.F.R. § 542.10 *et seq*. Inmates are encouraged to first resolve their complaints informally (BP-8). *See* 28 C.F.R. § 542.13. If informal resolution is insufficient, the inmate may file a formal complaint with the warden within 20 days of the date on which the basis of the complaint occurred (BP-9). 28 C.F.R. § 542.14. The warden then has 20 days in which to respond to the inmate's complaint. If the inmate is not satisfied with the warden's response, he may appeal the response to the Regional Office (BP-10). The Regional Office then

has 30 days to answer the claim. He may file a final appeal with the Central Office in Washington, D.C., if the inmate wants to challenge the Regional Office's response (BP-11). The Central Office has 40 days in which to respond. 28 C.F.R. § 542.18. After this final appeal, the administrative process is exhausted. Unexhausted claims cannot be brought in Court. *Jones v. Bock*, 549 U.S.199 (2007); *Porter,* 534 U.S. at 524. Finally, there is no "futility exception" to the PLRA exhaustion requirement. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Perez*, 182 F.3d at 536-37.

## ANALYSIS

### 1. *Plaintiff's Previous Claims Regarding Exhaustion of Administrative Remedies*

In the affidavit attached to Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff claims that while at USP Florence, he requested a BP-9 grievance form from his correctional counselor, Richard Madison, in order to begin the formal administrative remedy process in response to the alleged assault at USP Marion. Plaintiff maintains that Madison denied him the grievance form, and continued to do so past the 20 day period within which Bureau of Prisons ("BOP") rules require a BP-9 form to be filed. On August 18, 2006, Plaintiff filed a grievance in which he contested his placement at USP Florence. Plaintiff claims that after finally receiving the BP-9 form, he filed his complaint on August 28, 2006, but again, there is no record of a grievance filed on or around this day addressing the alleged July 27, 2006 assault.

In his Response, Plaintiff asserts that he no longer has a copy of the BP-9 form on which he allegedly filled out the grievance about the incident at issue, because USP Florence staff allowed another inmate to enter his cell and destroy his personal effects, including his copy of the BP-9 form. Plaintiff claims that on the evening of October 16, 2006, he panicked after not receiving his evening meal, and therefore set off the emergency sprinkler system, which soaked

4

his cell and the personal effects in the cell. Prison officials then allegedly allowed another inmate to clean Plaintiff's cell, and it was this inmate that allegedly destroyed Plaintiff's copy of his completed BP-9 form.

In light of Plaintiff's claims made in his Response to Defendants' Motion for Summary Judgment, there existed genuine factual disputes as to the following:

(1) Plaintiff's claim that he filed a grievance about the alleged July 27, 2006 assault despite the fact that it is not in the BOP records system, while 36 other administrative records filed between July 28, 2006 and February 2, 2007 are;

(2) Plaintiff's claim that he was denied BP-9 forms during his initial 20 days at USP Florence, despite the fact that he was able to file a grievance on August 18, 2006 – a mere 22 days after the alleged incident at USP Marion – which was dated August 15, 2006 – 19 days after the alleged incident; and

(3) Plaintiff's claim that his original BP-9 form addressing the issues in this case was destroyed by another inmate at USP Florence who was allowed in Plaintiff's cell.

### 2. *The July 23, 2010 Pavey Hearing*

At the July 23, 2010 *Pavey* hearing, Plaintiff claimed that after he arrived at USP Florence, he was given a BP-9 form by Wilmer Haygood, a counselor at USP Florence, and that this was the form used by Plaintiff in his attempt to grieve about the incident at USP Marion. Plaintiff further stated that he returned the filled out BP-9 form to Haygood during the first week of August, 2006, but did not receive a response to his alleged grievance. After not receiving a response, Plaintiff claimed that he filled out a BP-10 form, which he allegedly gave to Haygood to mail to the North Central Regional Office. After not receiving a response to the BP-10, he requested a BP-11 form from Haygood. Plaintiff stated that he was allegedly given a BP-11

from Haygood, which he said was submitted to the Washington, D.C. office. Plaintiff said that he asked Haygood about the status of his BP-11 form, and was told that the status was unknown. After not receiving a response to the BP-11, Plaintiff claims that he submitted a second BP-9 form. Plaintiff said that he did this because he did not receive a receipt acknowledging that his previous alleged grievance forms were filed. Plaintiff stated that, in the past, he had received receipts for the grievances he filed. Plaintiff says he filed this second BP-9 around August 22, 2006, which would have been 26 days after the alleged incident at USP Marion. Plaintiff further stated that he received a rejection notice from this second BP-9, because it was submitted more than 20 days after the incident at issue. Plaintiff claimed that he had a copy of his original BP-9 form, but that this form was destroyed by another inmate. He also claimed that his second BP-9 form was sent to his appointed attorney. Plaintiff stated that the reason he failed to previously disclose his filing of the BP-10 and BP-11 forms addressing the issues at hand was because he merely forgot about these previous filings.

In his testimony at the July 23, 2010 hearing, Haygood stated that he does not remember if he was given a BP-9, BP-10 or BP-11 form by Plaintiff, but that if he was given these forms, he would not have refused to file them. Haygood stated that he does not remember if Plaintiff complained about not receiving a response about his alleged grievance forms.

Richard Madison, Plaintiff's assigned correctional counselor at USP Florence, testified at the July 23, 2010 hearing that inmates were not allowed to go into other inmate's cells. Madison also stated that Plaintiff never complained to him about another inmate taking or destroying his legal documents.

Finally, Paul Pepper, an attorney with the BOP, testified at the July 23, 2010 hearing that BP-9, BP-10 and BP-11 forms are recorded by an electronic database after they are entered by an

administrative remedy clerk. Pepper stated that Plaintiff's records do not reflect that he filed a BP-9, BP-10, or BP-11 about the incident at issue in this case. Further, Pepper stated that the BOP has a late filing system that allows for a grievance to be filed late, which can either be accepted or rejected. Regardless of whether a grievance is accepted or rejected, the BOP's database maintains a record of these filings.

### 3. *Plaintiff's Failure to Exhaust his Administrative Remedies*

In light of the testimony provided by Plaintiff and the employees of the BOP at the July 23, 2010 hearing, as well as Plaintiff's Response to Defendants' Motion for Summary Judgment, the Court finds that Plaintiff did not, in fact, exhaust his administrative remedies as required by the PLRA.

The Court found Plaintiff's July 23, 2010 testimony to be incredibly unreliable, and directly contradictory to his previously sworn affidavit testimony, as well as that of other witnesses called at the *Pavey* hearing. Specifically, Plaintiff previously claimed that he requested a BP-9 form from Counselor Madison in order to begin the formal administrative remedy process, but that Madison denied him the form past the 20 day period within which BP-9 forms are to be filed. At the July 23, 2010 hearing, however, Plaintiff claimed that he did, in fact, fill out the BP-9 form within the 20 day period, but that either Counselor Haygood neglected to file the grievance, or that an employee of the BOP failed to enter the form in the records database. Further, in light of the fact that 36 of Plaintiff's grievances were recorded in the BOP records database between July 28, 2006 and February 2, 2007 – including one dated 19 days after the alleged incident at USP Marion – the Court is unable to reasonably infer that the BOP neglected to record Plaintiff's first and second alleged BP-9s, as well as his alleged BP-10 and BP-11.

Additionally, Counselor Madison testified on July 23, 2010 that inmates at USP Florence are not allowed in other inmates' cells.  The Court, therefore, cannot reasonably infer that another inmate was allowed in Plaintiff's cell, at which point Plaintiff's first BP-9 form was allegedly destroyed.

Finally, Plaintiff claimed at the July 23, 2010 hearing that his second BP-9 form was sent to his appointed attorney.  Defendants stated at this hearing that they have yet to receive a copy of this alleged second BP-9 form from Plaintiff's attorney.  Under Fed. R. Civ. P. 26(e)(1)(A), a party must supplement its previous responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…."  Had Plaintiff's counsel been furnished with the alleged BP-9 form, the Court is confident that under Rule 26(e), Counsel would have provided Defendants with a copy of this form in response to the previously propounded request asking for "[a]ll administrative remedies and/or grievances and responses." (Doc. 67, exh. 2, pg. 2).  While Plaintiff responded to this Request for Production by directing Defendants to the BOP records database, in a situation where no such grievance was recorded in the records database, had Plaintiff's counsel actually been in possession of the alleged BP-9 form, the failure to turn over any such form would be a violation of Rule 26(e).  Therefore, the Court cannot reasonably infer that Plaintiff ever filled out a first or second BP-9 form, a BP-10 form, or a BP-11 form.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 36) be **GRANTED**, and that judgment be entered in favor of Defendants Jesse Mash, Mark Weeks, and Wayne Boaz.

On April 9, 2009, this Court extended the 120-day deadline for completing service through May 29, 2009 (Doc. 32). Plaintiff was also directed to serve initial discovery requests seeking Defendant Lewis' full name. The failure of Plaintiff to more specifically identify Defendant Lewis seems to reveal that Plaintiff has lost interest in pursuing this litigation against Defendant Lewis. Dismissal for want of prosecution is appropriate when there is a clear record of delay or failure to comply with orders of the Court. The conduct outlined above shows that Plaintiff is no longer interested in prosecuting his claim against Defendant Lewis in accordance with orders of the Court. For these reasons, it is **RECOMMENDED** that Plaintiff's claim against Defendant Lewis be **DISMISSED** for want of prosecution.

Because no claims remain for decision, it is **RECOMMENDED** that judgment of dismissal enter at this time.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1 (b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**SO RECOMMENDED.**

**DATED:  August 2, 2010.**

>                    */s/ Philip M. Frazier*
>                    HON. PHILIP M. FRAZIER
>                    UNITED STATES MAGISTRATE JUDGE